No. 16.—JACOB LOWE, administrator, plaintiff in error, *vs.* RHODA MORRIS and another, defendants in error.

[1.] A writ of error without a seal may be amended by attaching a seal thereto.

Motion to dismiss writ of error.

The defendants in error joined issue, with a protestation, and moved to dismiss the writ of error upon the ground that the seal of this Court was not attached to the writ of error.

S. & R. P. HALL, POE & NISBET, for the motion.

HUNTER and S. T. BAILY, *contra.*

The Court not being unanimous in the decision, delivered their opinions *seriatim.*

WARNER, J.

[1.] This is a motion to dismiss the writ of error, on the ground that the Clerk of this Court has omitted to annex the seal of the Court thereto, as required by the 20th rule of practice. That rule requires, " that writs of error shall issue in the *name of the Governor of the State,* shall bear teste in the *name of the Judges of this Court,* shall be *signed by the Clerk,* and *sealed with the seal of this Court,* and shall be returnable to the *next succeeding term.*" 1 *Kelly,* 14. By the 22d rule of practice, it is made the duty of the Clerk of this Court, " to keep on hand for the use of the bar, blank writs of error, *according to the form adopted by this Court,* duly by him *signed* and *sealed,* to be furnished to the bar on application therefor." This writ of error has been issued by the Clerk in exact conformity with the rule, except the *omission* to attach the seal of the Court to it. The Clerk of the Superior Court has obeyed it by sending up the record to

this Court, and the parties have acted in obedience to it.   By the 1st section of the Act of 1852, it is declared, " that when the original writ of error, original citation and notice, and the original bill of exceptions, shall be filed, and served within the time prescribed by law, no cause pending in the Supreme Court shall be dismissed, but *any other error or defect shall be amended instanter*."   See *Acts of the Legislature* 1852, *page* 215.   Has there been a *writ of error filed* in this case, as contemplated by the Constitution ?   By the 1st section of the 3d article of the Constitution, the Supreme Court has jurisdiction alone, for the trial and correction of errors in Law and Equity, from the Superior Courts of the several circuits, brought before it by *writs of error.   Prince*, 909. No particular *form* is prescribed for *the writ of error*, by the Constitution or the Act of the Legislature organizing the Supreme Court.   *Blackstone* defines a writ of error to be, a writ which lies for some supposed mistake in the proceedings of a Court of Record, and which only lies upon matter of *law* arising upon the face of the proceedings.   3 *Blackstone's Com.* 406.   Mr. Sergeant *Williams* in a note to *Jaques vs. Sesar*, says, " A writ of error is an original writ, issuing out of the Court of Chancery, in the nature as well of a *certiorari* to remove a record from an inferior into a superior Court, as of a commission to the Judges of such superior Court to examine the record and to affirm or reverse it, according to *law;* and lies where a party is aggrieved by any error in the foundation, proceeding, judgment, or execution, of a suit in a Court of Record."   2 *Saunders' Rep.* 101, *note* 1.   The Constitution contemplates *such a writ of error* as was known to the Common Law, according to the foregoing definition, without any regard to *the specific form thereof*.

It is true, the rule of Court prescribes *the form*, but that rule, in my judgment, is merely *directory* to the Clerk.   The question is not, whether the parties to whom the writ of error was directed could be punished for not obeying it, because not in conformity with the rule ; but the question is, whether the party applying for this writ of error, issued

Lowe *vs.* Morris and another.

by *the Clerk of this Court*, shall be deprived of his constitutional right, merely because our own officer has *omitted* to put the seal of the Court to the writ, as *directed* by the rule? If the writ of error is a *mere nullity* without the seal of the Court attached to it, then, it cannot be *amended:* but that is an assumed proposition, which I deny. The rule does not declare, that a writ of error issued in any other manner than that prescribed by the rule, shall be *null* and *void: the rule* is not supposed to have any more binding effect than an Act of the Legislature. In the case of *Stephens et al vs. Crawford, Governor, &c.* (1 *Kelly*, 581,) this Court held, "that if a bond required by *Statute* departs from its *strict provisions*, as where the penalty is larger than that named in the Act, it is, notwithstanding, *good, so far as it is in conformity with it*; unless *the Statute expressly declares*, that all bonds not taken in conformity with its provisions, shall be *void*." Now this writ of error has issued in *exact conformity* with the requirements of the rule, except as to the seal of the Court being attached to it. The writ has issued in the name of the Governor of the State, bears teste in the name of the Judges of this Court, is signed by the Clerk thereof, and has performed all the functions of a writ of error, as contemplated by the Constitution. If the writ of error is *good, so far as it is in conformity with the requirements of the rule*, according to the principle settled in *Stephens vs. Crawford*, it cannot be said to be a *mere nullity*, simply because it lacks *the seal of the Court*. In my judgment, the rule is *merely directory* to the Clerk as to the manner in which writs of error issued by him shall be authenticated, and if he violates its provisions, it is an irregularity, which may subject him to personal peril and responsibility, but will not deprive the party of his constitutional right to be heard in this Court, as to the matters involved in the record which has been sent up here in obedience to our own mandate, attested by the official signature of our own officer, merely because he has failed to obey the direction of our rule of practice, in attaching the seal of the Court to the writ of error, which is in all other respects perfect.

I am therefore of the opinion, that *a writ of error* has been *filed*, as contemplated by the Constitution and the Act of 1852, and that the *clerical omission* of not attaching the seal of the Court thereto may be *amended instanter*.

LUMPKIN, J. concurring.

Is a writ of error a nullity without a seal?

My first impression was, that this defect was fatal. Upon reflection, my final conclusion is, the other way. I am not entirely satisfied, however, that I am right, for the reason that my brother NISBET thinks differently. And a life-long friendship, with an endeared official intimacy of seven years, has inspired me with the most unfeigned respect for the head as well as the heart of my colleague.

He has authority on his side, both ancient and modern, sacred and profane.

His signet or seal was the pledge of *identity* and fidelity, exacted by Tamar of Lord Judah, one of the twelve Princes of Israel. *Moses' Reports, Book Genesis, c.* 38, *v.* 18. See also, *Esther, c.* 8, *v.* 8 *and* 10. It would seem from this last case, that even at this early period *Monarchs* as well as *Courts* at this day, could only act through their official seal. And the reason given is, that the precept issued in the King's name and sealed with his ring, by his Clerk Mordecai the Jew, *may no man reverse.* And this is the strong position of my learned brother. (M. anciently, as now, I would remark, was a favorite *initial* for the name of Court Clerks, from *Mordecai* the *Jew,* even down to *Martin,* the *Gentile.*) Whatever else there may be that is new under the sun, it is very evident, from this last authority, that *mails* are not. For we are told that these letters mandatory of Ahasuerus were sent by *post,* on horseback, and riders on mules, camels and young dromedaries.

So much for the antiquity and importance of seals. It will be found, upon further investigation, that modern decisions adhere very strictly to these patriarchal precedents. *Bou-*

*vier* in his *Law Dictionary*, defines seal-office in English practice, to be the office at which certain judicial writs are sealed with the prerogative seal; "and without which," he adds, "they are of no authority." 2 *volume*, 495.

In *Lessee* of *Beal et al. vs. King et al.* (6 *Ohio*, 11,) the Court say, "No principle is more definitely settled, than that the process of a Court having a seal, can only be evidenced by its seal, which is the appointed mode of showing its authority."

By what is called the Practice Act, in the State of Illinios, it is provided, that the first process in a suit shall be a summons issued under the seal of the Court, &c. In *Hannum vs. Thompson*, (1 *Scammon's Rep.* 238,) it was held by the Supreme Court of that State, that the Clerk of the Circuit Court having omitted to put his seal to the original summons, the proceeding was void, and that too, after judgment had been rendered in favor of the plaintiff.

In *Hall vs. Jones*, (9 *Pick.* 446,) where an original writ, like the one before us, had the seal of the Common Pleas instead of that of the Supreme Court, to which it was returnable, the plaintiff having made use of a blank writ of the Common Pleas, he moved that the writ should be amended by affixing the proper seal; but the Court decided that it could not be done.

It is true, that in *Massachusetts* their *Constitution* has provided, that such process should be under the seal of the Court from which it issued. But the *rules* of this Court, under the power conferred upon it by the organic law to establish them, and especially when authenticated, as in this instance they have been, by legislative recognition, (see *Acts of* 1851–'2, *p.* 214, 215,) are equally binding with the provisions of the Constitution. It is only where they conflict, that the latter has paramount authority.

In *Bailey, Judge of Probate, &c. vs. Smith et al. executors,* (3 *Fair.* 196,) the same doctrine was ruled upon a precisely similar state of facts, to that adjudicated in the foregoing case. And the Supreme Court of Maine say, "upon the

whole, we regard the seal matter of substance, and the process being an original writ, it is not amendable. We do not abate the process so much for the sake of the defendant, as because the plaintiff has departed from a substantial requirement of law, of a public nature, in bringing his action."

Fearing lest my dissenting brother may not be as industrious in citing cases *against* himself as I have been for him, let the foregoing suffice.

Those who are curious to investigate the subject of seals, will find the best account of them in the writings of *Lord Hale* and *Baron Gilbert*.

The earliest mode of commerce, being by barter or exchange of a cow or sheep for some other commodity, it is supposed that the image of these and other animals stamped upon leather or other yielding substance, by wood or metal, constituted the first currency as well as the first use of seals ; next, the impression was made upon the metals, certain superscriptions, indicating the value of the coin, as a Napoleon or a Washington. The latter, without weighing, is universally taken in the United States, to denote twenty dollars. Next, contracts were attested by seals, either where chirography was not known, or where the party could not write his name.

*Lord Coke* defines a seal to be, wax with an impression, (3 *Inst.* 169.) " *Sigillum*" says he, " *est cera impressa, quia cera sine impressione non est sigillum.*" And this has been adopted as the Common Law definition of a seal. *Perk.* 129, 134. *Bro. tit. Faits.* 17, 30. 2 *Leon.* 21. But it is a curious fact, that there is neither an Act of Parliament nor an adjudged case, up to *Lord Coke's* day, to bind the Courts as to what constitutes a seal. His opinion was probably founded upon the practice of the country in his day.

New York, and most of the States North, have held that a seal is an impression upon wax, wafer or some other tenacious substance, capable of being impressed. 5 *John. Rep.* 239. 2 *Caines' Rep.* 262. 21 *Pick. Rep.* 417. But in Pennsylvania, New Jersey, and the Southern and Western States generally, the impression upon wax has been disused and a

circular, oval or square mark, opposite the name of the signer, is held to have the same effect as a seal, the shape of it being altogether indifferent. It is usually written with a pen, sometimes printed. 2 *Serg. & Rawle*, 503. 1 *Dall.* 63. 1 *Watts*, 322. 2 *Halst.* 272.

The truth is, that this whole subject like, many others, is founded on the usage of the times, and of the country. A scroll is just as good as an impression on wax, wafer, or parchment, by metal, engraved with the arms of a prince, potentate or private person. Both are now utterly worthless, and the only wonder is, that all technical distinctions growing out of the use of seals, such as the Statute of Limitations, plea to the consideration, &c. are not at once universally abolished. The only reason ever urged at this day, why a seal should give greater evidence and dignity. to writing is, that it evidences greater deliberation, and therefore should impart greater solemnity to instruments. Practically we know that the art of printing has done away with this argument. For not only are all official, and most individual deeds, with the seals appended, *printed* previously, and filled up at the time of their execution, but even merchants and business men are adopting the same practice, as it respects their notes.

Once the seal was every thing, and the signature was nothing. Now the very reverse is true: the signature is everything, and the seal nothing. Thanks to the advancing intelligence of the age! In the days of ignorance, to be able to read and write, would save a felon's neck. Many of the educated gentry now, who are too lazy to work, and prefer to live by their wits, are the fellows upon whom the penalties of the law are visited in their utmost severity.

So long as seals distinguished identity, there was propriety in preserving them. And as a striking illustration, see the signatures and seals to the death warrant of Charles the First, as late as January, 164 They are 49 in number, and no two of them alike. But to recognize the waving, oval circumflex of a pen, with those mystic letters to the unnitiated, L. S. imprisoned in its serpentine folds, as equipotent with

the coats of arms taken from the devices engraven on the shields of knights and noblemen; shades of Eustace, Roger de Beaumont, and Geoffry Gifford, what a desecration! The reason of the usage has ceased; let the custom be dispensed with altogether.

In *Jones & Temple vs. Logwood*, (1 *Washington's Rep.* 56,) President Pendleton states, that there was a period, when the impression was made with the eye-tooth, and thinks there was some utility in the custom, since the tooth's impression was the man's own, and presented a test in case of forgery. But this reason, however applicable in Virginia in 1791, does not hold true in this epoch of dentistry, when no man's tooth is his own, but teeth, like almost everything else, are artificial.

Another learned Judge, adverting to this same fact, traces to it the phrase, " I will prove it to your teeth, or by your teeth." He also supposes that " the cutting of the eye tooth" had an allusion to this, whether the eye-tooth being cut at a certain age, it might denote the being of the age of discretion, so as to be capable of contracting, or whether it related to the impression of that tooth as a mark, being a tooth of signal and singular impression.

What magic, I ask, is there in our own seal? True, the Clerk has attested this writ of error in his official name, and by his private seal, and in obedience to it, the Clerk of the Circuit Court has certified and transmitted to this Court all the records and papers of file in the Court below, which are necessary to enable us to hear and determine properly, this cause, upon its merits. But then we look in vain on this writ, for the three pillars supporting an arch, with the word Constitution engraven within the same, emblematic of the Constitution, supported by the three departments of Government; Legislative, Judicial, and Execut▮e. The first having engraven on its base, Wisdom, the sec▮d, Justice, and the third, Moderation, and then on the right of the Executive column, a man standing with a drawn sword, and resembling most strik-

ingly in figure and attitude our most worthy and excellent Chief Magistrate.   But I forbear.

*Illi robur et aes triplex.*   He would be a bold Judge indeed, who would venture to decide *an issue of law* in the absence of this *speaking* device !   There is a charm in that arch—a spell in those pillars—an inspiration in the eye of that fierce-looking swordsman, which guarantees a faithful administration of justice, although simply and but very imperfectly impressed on the foolscap paper on which the writ of error is printed, instead of wax or some other tenacious substance.

To whom we are indebted for the change in our seal, I am not antiquarian enough to state.   The old devices, I always venerated; the one side the scroll on which was engraved the Constitution of the State of Georgia and the motto, *pro bono publico.*   On the other side, an elegant house and other buildings, fields of corn, and meadows covered with sheep and cattle ; a river running through the same, with a ship under full sail and the motto, *Deus nobis hæc otia fecit.*   The Latinity as well as the piety of this seal, commend themselves to my hearty admiration.   They will challenge a comparison, even on the score of architectural taste too, with the *arch* resting on *three pillars.*   But then the capital defect in the old seal— who does not anticipate me ?—was the absence of that *cocked-hat swordsman.*   Without this *addendum,* it is difficult to decide that any public document can impart absolute verity. This, it is, I am sure, that has exerted such a controlling influence over the judgment of my dissenting brother, with his well-known military propensities.

The Act of 1845 authorizes this Court to establish and procure a seal.   My recollection does not serve me whether the State Coat of Arms was selected as the device.   I take it for granted it was.   If so, where, upon any seal attached to any writ of error or citation returnable to this Court, are those three potent and 'cabalistic words: wisdom, justice, and moderation ?   Do not these constitute a part of the seal just as much as the seal does a part of the writ of error ?   Is it the seal of this Court without them ?   If so, how much, and

what portions of it may be omitted and still leave a good seal? Would it be a seal without the arch, without the pillars, without the motto? I forbear even to put the question whether it would be a seal without the *military effigy?* without that *cocked-hat swordsman?* Of course it would be a nullity. As well talk of a *man* without a *body!*

For myself, I am free to confess, that I despise all forms having no sense or substance in them. And I can scarcely suppress a smile, I will not say "grimace irresistible," when I see so much importance attached to such trifles. I would cast away at once and forever, all law not founded in some reason—natural, moral, or political. I scorn to be a *"cerf adscript"* to things obsolete, or thoroughly deserving to be so. And for the "gladsome *lights* of jurisprudence" I would sooner far, go to the reports of *Hartly,* (Texas,) and of *Pike and English,* (Arkansas,) than cross an ocean, three thousand miles in width, and then travel up the stream of time for three or four centuries, to the ponderous tome of *Sidenfin and Keble, Finch and Popham,* to search for legal wisdom. The world is changed. Our own situation greatly changed. And that Court and that country is behind the age that stands still while all around is in motion.

I would as soon go back to the age of monkery—to the good *old* times when the sanguinary *Mary* lighted up the fires of Smithfield, to learn true religion; or to *Henry VIII.* the British Blue-Beard, or to his successors, *Elizabeth,* the two *James's* and two *Charles's,* the good *old* era of butchery and blood, whose emblems were the pillory, the gibbet and the axe, to study constitutional liberty, as to search the records of black-letter for rules to regulate the formularies to be observed by Courts at this day.

I admit that many *old* things may be *good* things—as old wine, old wives, ay, and an old world too. But the world is older, and consequently wiser now than it ever was before. Our English ancestors lived comparatively in the adolescence, if not the infancy of the world. It is true that *Coke, and Hale, and Holt,* caught a glimpse of the latter-day glory, but

died without the sight. The best and wisest men of their generation were unable to rise above the ignorance and superstition which pressed like a night-mare upon the intellect of nations. And yet we, who are "making lightning run messages, chemistry polish boots and steam deliver parcels and packages," are forever going back to the good *old* days of witchcraft and astrology, to discover precedents for regulating the proceedings of Courts, for upholding seals and all the tremendous doctrines consequent upon the distinction between sealed and unsealed papers, when *seals de facto* no longer exist! Let the judicial and legislative axe be laid to the root of the tree; cut it down; why cumbereth it, any longer, *courts and contracts?*

Having treated this subject scripturally and historically, though very discursively, I propose to add a word or two upon the physiological aspect of the question. And I repeat the interrogatory propounded at the beginning of this opinion, namely, what defect will make a writ of error void? And I answer the query by proposing another: what defect, original or supervenient, will reduce man from the genus *homo?*

Will the amputation of the feet and legs disfranchise a descendant of Adam of his title to manhood! It will not be denied but that he may lose every limb of the body and leave nothing but the naked trunk, and yet be a *man* "for a' that." And is the seal, though it be constituted of the arch, and pillars and swordsman, more essential to the writ of error, or a pedestal to support it, than legs and feet and arms are to manhood? Common sense will decide.

By the XXth rule, the writ of error is required to issue in the name of the Governor of the State, bear test in the name of the Judges of this Court, be signed by the Clerk and sealed with the seal of this Court, and be made returnable to its next succeeding term.

The XXIVth rule prescribes imperatively the form of the writ, "the following shall be the form of writs of error," &c. *Supreme Court Manual* 33. The provisions of this latter rule, it would seem, should be no less binding than those of

the former.   And any departure from either would be equally incurable or alike amendable.   And yet we have not hesitated to allow writs of error to be amended as to dates, names of the parties, and other important particulars prescribed by the form.   2 *Kelly*, 408.   4 *Geo. Rep.* 403.   5 *Ib.* 582; and that too, before the law as to amendments was as liberal as it has since been made by subsequent Statutes.   We have gone upon the ground that neither the XXth nor the XXIVth rule declared that the writ should be void unless issued in the form prescribed.

Neither at Common Law nor by any of the Statutes of Amendments and Jeofails was the writ of error amendable in England till the Statute of 5 *George I.* was passed, and the reason assigned for this exclusion was like much of the other technical folly to be found every where in all the *old* English books, to-wit, that amendments were granted for the *support* of judgments, but that the principal design of the writ of error is to *reverse* them.   But by the 13th chapter of the Act referred to, it is declared, "that all writs of error, whenever there shall be any variance from the original record, *or other defect*, may and *shall be* amended by the respective Courts where such writ or writs of error shall be made returnable."   *Collins vs. Muxworthy, Cas. Tem. Hard.* 194.

We have adopted this Statute.   And if we had not, the Act of our own Assembly, approved 23d Feb. 1850, is almost if not altogether as broad and comprehensive as that of the mother country.   *Cobb's New Digest*, 455.   And it will be . found, upon examination, that wherever this Act of *George* has been adopted, or similar Statutes have been passed, the . most liberal practice has obtained as to the amendments of writs of error.   Indeed, it is difficult to prescribe any limit to this remedial procedure.   3 *Binn.* 626.   2 *Watts*, 294.

With these desultory remarks, I am content to leave the law, learning, and logic of the case to my brother *Warner*, to whom it legitimately belongs, and who, I have no doubt, will do ample justice to the argument, and with whom I *concur*, in *retaining* the writ of error.

Lowe *vs.* Morris and another.

NISBET, J. dissenting.

The writ of error in this case had not the seal of the Court attached to it, and the motion was to dismiss it on that account. Averse always, from turning a party out of Court without hearing the merits of his cause, I see no alternative, in the present instance, but to sustain the motion. Indeed, if it is not sustained, I see no stability in any rule of this Court; for each and all, in my view of the matter, may, with as good reason, be dispensed with, as that one which in so many plain perspicuous words declares, that the writ of error shall be "signed by the Clerk *and sealed with the seal of this Court.*" See 20*th rule Supreme Court.* The *seal* of this Court exists by requirement of the organic law; it is not the creation of the Court; it is no handiwork of ours. We have a seal in obedience to the legislative will, and if there be folly or weakness in the use of a thing in itself so utterly insignificant, (as some believe) the folly or weakness lies at the door of the *General Assembly of the State of Georgia.* If it has outlived the age and the condition of things in which it originated, and the retention of it is therefore unworthy an age of progress and the light of a new order of things, the reproach of dishonoring this brilliant era, belongs to the Legislature. "Thou canst not say I did it." The 14th section of the Act organizing this Court, among other things, declares "that the *Judges* of said *Supreme Court* shall have power to establish and procure a *seal* for said *Court.*" This clause is mandatory to the Judges to establish and procure a seal. Will it be said that there was a discretion to establish and procure a seal or not, according to the views which the Judges might entertain of the necessity or propriety of a seal? I apprehend no one will so say. The Legislature, in giving the *Judges* power to *establish,* that is, to determine what should constitute the seal, and to *procure,* that is, to purchase it, assumed that a *seal* was necessary; and upon the *Judges* they devolved the duty of providing it. We did not consider that we had any discretion about it, and accordingly one of the first things done by this Court after its organization, was to

*establish and procure a seal.* We also very naturally concluded that inasmuch as the *Legislature* had required a seal for the Court, they intended it to be applied to some use, and accordingly we declared, in our *20th rule,* that it should be used *to authenticate our own processes.* Nor was the application of it to this use an unwarrantable usurpation of power, for the 14th section of our organic law also declares that "the *Judges* of said *Supreme Court* shall have power to establish *rules* of practice." The Act of 1850 forbade the *Clerk* of this Court to make a charge for attaching the seal to our writs of error; and the Act of 1852 repealed the prohibition. So it seems, that the use to which we applied it by our rule, to wit, the authentication of the writ of error, received by implication the legislative sanction in 1852. Certain it is, that we have never repealed it; the lawyers who have practised at this Bar have not considered it either, repealed or obsolete, but have acted upon the idea that what we have required to be done must be done at the peril of the dismission of their causes. Our rules, when not repugnant to the law or to the Constitution, have themselves the force and effect of law. We have given to them the same efficiency that we have given to the Statutes of the State. Under them, causes have been dismissed, and thereby, judgments in the Courts below have been affirmed, never again to be opened. So potent have we held them, that the rights of parties have been concluded without a hearing here, because of their non-observance. In *Chapman vs. Gray,* my learned brother, *Lumpkin* holds this language : "the rules of this Court are the laws of the Court, and must be obeyed, until they are repealed, unless it can be shown that they are repugnant to the paramonut law." 8 *Geo. R.* 339. So that, upon our own authority, the *20th rule* stands upon our Statute book, not only the law of this Court, but also of the parties who invoke its corrective jurisdiction. Our rules are in subordination to the legislative power. To this proposition, however, there may be some qualification. Suffice it to say, that the power of the Legislature to annull the rule under consideration is not questioned. It is not pre-

Lowe *vs.* Morris and another.

tended that it has been annulled by the Legislature. Confessedly then, *by law,* the seal of the Court must be attached to the writ of error. But it is said that the want of a seal is a defect which may be supplied by amendment, and the right to amend is derived from the 1st section of the Act of *January,* 1852. That section is in these words : "when the original writ of error, original citation and notice, and the original bill of exceptions, shall be filed and served within the time prescribed by law, no cause pending in the *Supreme Court* shall be dismissed, but any other error or defect shall be amended instanter." *Acts of* 1851, 1852, *p.* 215. So far from this Act extending to a defect of this sort, to my mind it expressly excepts it from the operation of the amending power therein conferred. It declares that the original writ of error shall be filed, in this, that it declares *when* the original writ of error *shall be filed,* then, *any other* error or defect shall be amended instanter. This is manifestly equivalent to a declaration, that if the defect is that the original writ of error has not been filed, that defect shall not be amendable. The Legislature meant to leave the filing of a writ of error, a citation, and notice, and the bill of exceptions, and the service of the notice, intact. These things must be done, at all events, and if not done, there could not be any after relief by amendment. To what writ of error had the Legislature reference ? To the writ of error of the Common Law ? No, but to the writ of error of this Court—the writ of error which our rules have adopted, for be it remembered that the writ of error of the *Supreme Court of Georgia* is, in all its qualities and forms, the creature of our rules. The *Constitution* says that cases shall be taken up by writ of error, and that is all that it does say. The law is profoundly silent as to a writ of error. We were therefore left to frame one by our rules, and in establishing it, we said that the seal should be attached to it. It is to this writ and none other that the Act of 1852 has reference. If it has not, but refers to some other writ recognized by other Courts, what Courts ? Courts of Great Britain ? Why not say so ? Can it be inferred,

in the face of the fact, that this Court was in the use of a writ framed by its own rules and carefully adapted to all the peculiarities of our organization and familiar to the profession; that the Legislature intended to ' say that if a writ, recognized by the Common Law or any other law, was filed, then any other defect in the pleadings should be amended? No, for such an inference would violate all the reason and all the probabilities of the case. They intended to say that if the writ which we have framed is filed, then any other error or defect shall be amended instanter. This being conceded, and I see no escape from the concession, I say, that in this case the writ of this Court was not filed, and there was no case in Court. The rule requiring the writ to be sealed with the seal of this Court, without such seal, no matter what else the paper contained, it was no writ. We made the seal vital to the writ; it is an original preliminary element of its being; it is, by our own legislation, indispensable to its legal existence. If these things be so, there was not only nothing to amend by, but nothing to amend. The so-called amendment, by adding the seal, would not be an amendment, but the issuing of a writ of error, *nunc pro tunc*, a kind of *ex post facto* process, a mandate requiring the Court to certify and send up the proceedings in a cause, which without a command, he had already voluntarily laid before us. What if a Judge of the Superior Court should decline to obey a writ of error not authenticated by the seal of this Court?

Would he be in contempt? Would it not be a conclusive answer for him to say, I have not disobeyed the process of the Court, for the law of the *Supreme Court* requires its process to be authenticated by its seal, and no mandate so authenticated has been exhibited to me? If it be answered to all this, that there is no legal virtue in an impression of . a few words or figures or symbols on wax, or wafer, or paper, called a seal, and attached to a writ of error, I reply, that such a suggestion might have been made with some propriety to the Court, when it was about to adopt the rule, which made so trifling an affair so eventful in its operation. I might, my-

Lowe *vs.* Morris and another.

self, listen to such suggestions now, upon an application to repeal the rule. It is sufficient for me to know that it is the law of the Court, and I do not perceive how I am to escape from the obligation, as an administrator of that law, to enforce it. Nor is the use of a seal so unmeaning a relic of barbarism as, at first view, it might seem to be. The administration of the Common Law depends, in innumerable instances, upon forms, in themselves, it may be, unmeaning or even ridiculous; but consecrated by time and usage, they have become substance, and rights are as effectually guarded by them, as if, in themselves, they were ever so significant. Those forms are as obnoxious to criticism as the *seal.* So permanently fixed is *the seal* in the laws and jurisprudence of this country, that it cannot be removed without unsettling several of the most important titles of the science. It may be, if you please, an unsightly excrescence, but apply to it the knife, and the life of the patient is endangered. Even in this age, whose vocation seems to be to reform everything from the religion of Heaven down through a descending series almost infinite, to a *certiorari;* the seal of my *Lord Coke* retains a place of commanding power in the law which governs individuals and empires. It governs titles to lands; it determines the gradation of debts in the settlement of insolvent estates; it rules the application of the Statute of Limitations, and controls, to some extent, the action of corporations, and it verifies judicial records. The *Great Seal,* in England, gives validity to grants and letters patent from the Crown, and its withdrawal or delivery creates or uncreates the Chancellor. When nations contract, upon equal terms, their seal solemnizes and verifies the consummation. We too have our *Great Seal,* subserving many purposes of State sovereignty and domestic administration, guarded with jealous care, and delivered with ceremonial pomp to each elected Chief Magistrate in the presence of the representatives of the people. It is too late in the day to undertake to lessen the dignity or undervalue the uses of seals. The policy of applying a seal to a judicial writ is to give ceremony and

solemnity to its issue: to draw and fix attention to it, and effectually to prevent fraudulent uses of it. Such policy commends itself to the reason and good sense of every man. Because it does so commend itself I am disposed to retain our 20th rule, and enforce it whilst it is retained.

It is said that the omission of the seal in this case is a clerical error. If it is, that does not affect the question. But *non constat* that it is a clerical error. The record does not prove it to be one. The 22d rule of this Court makes it the duty of the Clerk to keep on hand, for the use of the Bar, blank writs of error and citations, according to the form adopted by the Court, duly by him *signed and sealed*, and to furnish them to the Bar upon application. He does not file the writ—his duty is discharged when he furnishes it duly signed and sealed. The party or his attorney files it, and it is at his peril that a valid writ is filed. Whether this identical writ was furnished by the Clerk or not, does not appear. Whether it was or not is immaterial. A valid writ was at the command of the counsel, and it was his business to see to it that a valid writ was filed. He has not done so in this case. *See 22d rule Supreme Court.*

The importance of this question reaches beyond the case in which it originated. The importance and necessity of rules and their strict and uniform enforcement, to the proper dignity and efficiency of the Court, are involved in it. Better have no rules than to make them yield to times, occasions, expediences, or what are called hardships. Better is it to enforce with steadiness, a bad law, than to permit a good one to fluctuate in our hands. It has been our uniform habit to compel a strict enforcement of all the rules of this Court. Differing from my colleagues, I think that the judgment on this motion is a departure from that habit. Having endeavored to sustain my dissent by reasons and authority, I will only add, endorsing it, what my learned brother *Lumpkin* said on a former occasion on the subject of rules: "I would only remark, in conclusion, that families, schools, corporations, Courts, countries, the world, the universe, are all governed

by *rules*, and *either* wanting these, ends in confusion and chaos." *Turner vs. Collins*, 8 *Geo. R.* 255.