78 U.S. 193
 20 L.Ed. 110
 11 Wall. 193
 GENERES
v.
CAMPBELL.
 December Term, 1870
 
 ERROR to the Circuit Court for the District of Louisiana; the case being thus:
 Campbell sued Generes, November, 1868, in the court below, as indorser of a promissory note, given as the price of certain slaves, and executed at New Orleans April 4, 1861, payable in that city two years after date, at the office of Abat, Generes & Co.
 The petition averred that when the note became due, April 7th, 1863, there was a civil war existing in Louisiana and other States of the Union; that all intercourse between New Orleans and the place of the then residence of the plaintiff, to wit, the parish of St. Helena, was interrupted and prohibited; that the petitioner was unable to make the presentment and demand of the note at the place of payment by reason of the existing war and the prohibition and interruption of intercourse thereby created; that the petitioner could not come from said parish; that this condition continued until the month of June, 1865; that immediately after its cessation the petitioner came to New Orleans and demanded payment of the note; and that the defendant had due notice of all of the foregoing circumstances.
 The defences were, that the defendant was not liable as indorser, from want of protest and notice of protest; that the note was extinguished by prescription; that being given for a purchase of slaves, it could not now give rise to an action. Evidence was taken by both parties. The case was tried by the court under the act of March 3, 1865. This act provides that the finding of the court upon the facts—which finding may be either general or special—shall have the same effect as the verdict of a jury; that the rulings of the court in the progress of the cause may be reviewed by this court, when properly presented by a bill of exceptions, and that where the finding is special this review may extend to the sufficiency of the facts found to support the judgment.
 'For reasons orally assigned by the court,' it was adjudged that the defendant's plea of prescription be overruled, and that there be judgment in favor of the plaintiff for the sum of $6300.
 The defendant filed a bill of exceptions thus:
 Be it known, that on the trial of this cause the counsel for defendant argued as follows, viz.:
 The evidence shows that the plaintiff was doing business in New Orleans, and the note sued upon was dated at New Orleans, April 4th, 1861, payable at the counting-house of Abat, Generes & Co., in New Orleans, two years after its date, to the order of and indorsed by the defendant. The suit was brought on the 18th November, 1868, and the petition alleges that at the maturity of the note, to wit, the 7th April, 1863, there was a civil war existing in Louisiana and other States of the Union, and that all intercourse between New Orleans and the place of the then residence of the plaintiff, viz., the parish of St. Helena, in Louisiana, was interrupted, and that the petitioner was wholly unable to make a presentment and demand of said note. But the evidence shows that said plaintiff left New Orleans in the fall of 1861; he was doing business here; was a regular negrotrader in the city of New Orleans; had obtained possession of the note sued on, and in the course of his business; when, in the fall of 1861, the city of New Orleans being then besieged by the Federal fleet, the plaintiff closed his business and went to his summer residence on the line of the New Orleans and Jackson Railroad, in the parish of St. Helena. The said counsel argued, upon this statement of facts, that the impossibility to make a presentment of the note at its maturity was not what was termed by the law vis major, but a matter entirely of plaintiff's own seeking. The plaintiff, being shown to have spontaneously so circumstanced himself as to bring upon him the alleged impossibility to act at the maturity of the note, is not entitled to the favor of the doctrine contra non valentem, &c. Furthermore, the said counsel argued, that long before the maturity of said note New Orleans was in possession of the government, and, in virtue of the President's proclamation inviting all loyal citizens to return, the plaintiff might have been here attending to his business, if he thought proper. It is shown by the evidence that the road from the plaintiff's house, in St. Helena, to the city of Baton Rouge, was only about fifty miles; that there were a great many people who made it a trade, throughout the duration of the war, to travel between Baton Rouge and the plantations on the river coast, to and from the Jackson railroad stations. A witness says, and he is not contradicted, 'I can't say when Baton Rouge was occupied by the Federals, but I believe it was in 1862. The communications between Baton Rouge and the stations on the Jackson railroad were very frequent.' Said counsel urged that, as the plaintiff had gone into the lines of the opposite side, he might have returned, and consequently the alleged vis major had no existence in fact.
 But the court overruled the pleas of prescription and of want of protest urged by the defendant.
 The said counsel furthermore urged that the plaintiff failed to make a presentment and a protest of the note so soon as freedom of action had been resumed throughout the country. It is in proof that the plaintiff returned to New Orleans in the summer of 1865, to wit, on the 12th of June, 1865, which was about two years and two months after his note had matured. No protest from that time was ever made. The present suit was filed on the 18th of November, 1868. The said counsel argued, that under the circumstances shown, even if there had been hitherto a room for the plea of vis major, there was a clear laches in not protesting in reasonable time.
 But this plea was likewise overruled by the court.
 The said counsel argued, that under the provisions of the Civil Code of Louisiana, viz., art. 3420, 3487, 2512, 3488, et seq., that the rule contra non valentem will not apply except in cases expressly mentioned, and that these exceptions do not apply to the present cause.
 But this plea was likewise overruled by the court.
 And lastly, the said counsel argued that the consideration of the note was proved in the evidence to be for slaves sold to the maker, and was therefore illegal. The testimony on this point is as follows: 'The note, the whole of it, was given to Campbell for a purchase of slaves by my brother from him. Campbell, at that time, was a slave-dealer in New Orleans. He was a regular slave-dealer, and had his depot on Baronne Street, in New Orleans, and was engaged in that business for several years.'
 The said counsel argued that such actions could not be held upon general principles, and particularly were prohibited by art. 128 of the constitution of Louisiana, as follows: 'Contracts for the sale of persons are null and void, and shall not be enforced by the courts of this State.'
 But this plea was also overruled by the court.
 To all which rulings the counsel for said defendant respectfully excepts, and presents this his bill of exceptions for the signature of his honor the judge.
 Signed, E. H. DURELL, Judge.
 The reader will observe that this bill, though signed, was not sealed.
 Messrs. J. A. and D. G. Campbell, prior to arguing the matter of merits, objected to the bill of exceptions as not sealed. In Pomeroy's Lessee v. Bank of Indiana,* Clifford, J., delivering the opinion of the court, is very learned and emphatic on this point. He says:
 
 
 1
 'Bills of exception in the Federal courts are required to be drawn as at the common law under the statute of Westminster II; and, of course, they must be sealed by the judge as therein required. Justiciarii apponant sigilla sua, is the express command of the statute; and so is the commentary of Lord Coke.'
 
 
 2
 Independent of which the frame of the bill, they argued, was defective. There was no statement of facts nor proper presentation of the questions at issue.
 
 
 3
 Mr. Louis Janin, contra, stated, as respected the matter of a seal, that in his very long professional practice in the State of Louisiana he had rarely if ever seen on a bill of exceptions the signature of the judge accompanied by one of those scratches of the pen that by courtesy are called 'seals;' a meaningless matter in the law of Louisiana, or of the other civil law countries. What was said in Pomeroy's Lessee v. Bank of Indiana was dictum.
 
 
 4
 He submitted that the record presented a good enough bill of exceptions. It combined a concise and clear statement of the facts with a clear explanation of the points of law which the counsel desired the court to rule. If in a few words it differed from the usual style employed in such documents, that might be attributed to the circumstance that English was probably not the mother tongue of the counsel who drew it up. But its meaning cannot be misunderstood. It had the substantial merit of bringing the whole case, both the facts and the law, before the court. Even the statement of fact in the bill of exceptions commenced with the words, 'It is in evidence, or in proof.'
 
 
 5
 The counsel on both sides then argued the merits of the case, and especially the question of the right to enforce by suit notes given on the sale of slaves prior to emancipation, Mr. P. Phillips, counsel in another case involving this point, being heard along with the Messrs. Campbell in support of the right.
 
 
 6
 Mr. Justice SWAYNE delivered the opinion of the court.
 
 
 7
 This is a writ of error to the Circuit Court of the United States for the District of Louisiana. The plaintiff in error was the defendant in the court below. The action was brought against him as the indorser of a promissory note. The parties, pursuant to the act of Congress of March 3d, 1865, filed a written stipulation waiving a jury, and the cause was tried by the court. A judgment was rendered against the defendant. He took a bill of exceptions. No facts were specially found by the court.
 
 
 8
 The act referred to provides that the finding of the court upon the facts—which finding may be either general or special shall have the same effect as the verdict of a jury; that the rulings of the court in the progress of the cause may be reviewed by this court, when properly presented by a bill of exceptions, and that where the finding is special this review may extend to the sufficiency of the facts found to support the judgment. This act is general in its terms as to the scope of its operation, and embraces the District of Louisiana.
 
 
 9
 There being no special finding of the facts, the inquiry as to their sufficiency to support the judgment does not arise.
 
 
 10
 Our examination of the case must be confined to the bill of exceptions.
 
 
 11
 It is objected that this instrument was not sealed, as well as signed, by the judge. The statute of Westminster prescribes a seal, but no act of Congress and no rule of this court contains such a requirement. Though usual in the practice of the courts of the United States, it is not necessary. The signature of the judge is sufficient.
 
 
 12
 It does not appear that the defendant objected to any of the testimony which was admitted. No question relating to the subject is presented for our consideration.
 
 
 13
 It is shown by the bill of exceptions that sundry legal propositions were argued by the counsel of Generes and were overruled by the court. The entire bill is a series of interlocutions between the counsel and the court, in which the evidence is referred to; but the bill does not purport to give all the evidence upon either of the subjects to which the exceptions relate.
 
 
 14
 In the entry of the judgment it is stated that it is given 'for reasons orally assigned by the court.' What those reasons were is not set forth. Whether they were that there was other evidence besides that referred to in the bill of exceptions, or that the court drew different conclusions from those deduced by the counsel, or that the court entertained different legal views from those upon which the counsel insisted, is not disclosed. Had the facts been specially found no such doubt could have existed. The case would then have presented clearly all the propositions to which the attention of the court below was called, and in relation to which it is insisted errors were committed.
 
 
 15
 For any error in relation to the facts a writ of error is not the proper remedy. If all the testimony given were set out in the record we could not examine it with the view of determining whether it is sufficient to support the judgment.** If sufficient, the remedy was a motion for a new trial, or by having the facts specially found. In the latter case a writ of error would lie to correct the wrong, if any were done. According to the statute the finding of the court stands as would the general verdict of a jury, and has the same effect. The plaintiff in error is in the same position as if he were here complaining that the jury erred in overruling the points and propositions which were argued to them in his behalf, and had found for the plaintiff when they should have found for the defendant. The evidence was closed, and the court was sitting in place of a jury when his exceptions were taken.
 
 
 16
 We are all of opinion that the propositions upon which the plaintiff in error insists are not so presented that we can take cognizance of them.
 
 
 17
 JUDGMENT AFFIRMED.
 
 
 
 *
 1 Wallace, 599.
 
 
 **
 Pennock v. Dialogue, 2 Peters, 1.