## WOLF *et al.* v. COOK *et al.*

(*Circuit Court, E. D. Wisconsin.* November 25, 1889.)

1. **AMENDMENTS—WRIT OF ATTACHMENT.**
   Rev. St. Wis. §§ 2829, 2830, require the courts to disregard any errors not affecting substantial right, and give power to amend any process by correcting mistakes at any stage in the proceedings. Rev. St. U. S. §§ 948, 954, provide that the courts may allow amendment of any process when the defect is not prejudicial, and that no writ shall be abated or quashed for want of form. Section 646 provides that on removal of a suit from the state court any attachment shall hold the goods, the same as under the state laws. *Held,* that where a seal is omitted by mistake from a writ of attachment issued in a suit begun in a Wisconsin court, but removed to the federal court, the latter court will regard the writ as amended in that particular, as it would have been so amendable under the state laws.

2. **SAME—WAIVER.**
   By moving to set aside the levy on other grounds, and failing to object to the defective writ before filing the statutory bond for the release of the property, defendants waive all objection to the writ.

3. **SAME.**
   By giving bond and receiving restitution of the property seized, defendants waive the objection that the property was not subject to attachment.

4. **PLEADING—PENDENCY OF PRIOR SUIT.**
   Pendency of a libel in admiralty against a vessel is no bar to an attachment suit at law against the owners, for the same cause of action.

5. **ABUSE OF PROCESS.**
   Whether the levy of an attachment in an action *in personam* upon the *res* bonded in a proceeding *in rem* for the same debt is abuse of process, *quære.*

At Law.

In May, 1889, the plaintiffs brought suit in the circuit court of Milwaukee county, to recover an alleged balance of account of $14,999.41, for services, materials, and moneys furnished the defendants between

October 1, 1887, and June 16, 1888. At the institution of the suit a writ of attachment was issued against the property of the defendants, as non-residents of the state, by virtue whereof the sheriff of Milwaukee county, on the 20th day of May, 1889, seized the steam propeller Huron City, then at the port of Milwaukee, as the property of the defendants. On the 23d of May, the attached property still remaining in the custody of the sheriff, the defendants moved the court to set aside the levy under the writ, because, as alleged, the vessel seized was not subject to attachment in the action. This motion proceeded upon the ground that in June, 1888, the plaintiffs filed their libel in the district court of the United States for the district of Indiana against the propeller Huron City, for the same debt sought to be recovered in this suit, and claimed to be a lien upon the vessel, enforceable in the admiralty. In that admiralty proceeding, process was issued, under which the vessel was seized by the marshal, and held in custody until the filing of the usual stipulation by the claimants (defendants in this action) in the sum of $25,000, with surety, conditioned to abide by and pay the money awarded by the final decree in such admiralty proceeding, when the vessel was released and surrendered into the possession of the claimants, (defendants in this suit.) It was also alleged that the amount claimed by the libel is the same liability and claim sought to be recovered in this action. The libel alleges repairs and supplies furnished the Huron City at the port of Milwaukee between October 1, 1887, and June 16, 1888, and a balance due therefor of $15,149.23. It is conceded that the claim here includes, with other charges, the claim preferred in the libel. The admiralty proceeding is still pending. On the 24th day of May the state court overruled the motion to set aside the levy. On the next day the defendants duly delivered a bond, pursuant to statute, conditioned to pay such judgment as might be rendered in the suit; and thereupon the vessel was released. On the 19th day of June, upon the *ex parte* application of the defendants, the state court ordered that the defendants' application to vacate the levy "stand for a rehearing," and assigned such rehearing for June 29th. The motion upon which that order was granted alleges for cause that the property attached was not subject to seizure, and is grounded upon the same facts and records considered upon the original hearing of the motion. The only new fact disclosed is the giving of the bond, and the release of the vessel, subsequently to the order of May 24th. Upon the 22d day of June the defendants filed in the state court their petition and bond for the removal of the cause to the federal court; and such order was made, accordingly, on that day. The defendants now here renew the motion pending in the state court at the time of the removal of the cause, for the release of the levy under the writ of attachment. They reassert here the grounds upon which the motion there was based, and urge the further ground that the writ of attachment was void upon its face, and no lawful levy could be made thereunder. It appears from the record that the writ issued out of circuit court, but, by misprision of the clerk, was sealed with the seal of the superior court; both courts having the same clerk. The plaintiffs, on their part, move to amend

the writ of attachment by affixing the proper seal of the state circuit court. This is opposed by the defendants, who assert that the writ is without seal, and therefore a mere nullity, and not amendable.

*Geo. D. Van Dyke,* for plaintiffs.

*E. P. Smith* and *Geo. P. Miller,* for defendants.

JENKINS, J., (*after stating the facts as above.*) Undoubtedly, at common law, an unsealed writ was void. *Insurance Co.* v. *Hallock,* 6 Wall. 556. The rule grew out of the conditions of society and the necessities of the state. An original writ issued out of chancery, and in the name of the king, the "fountain of all justice." It was a grant of jurisdiction from the sovereign to the court to which it was returnable; a sort of commission to the court of law to hear the cause. It was called by Coke "the heart-strings of the common law." The seal to the writ was the symbol of sovereign power; the authentication to the king's commission, the basis of all jurisdiction. Without the seal, the writ was void; conferring no right to the exercise of judicial authority, because the commission lacked the expression of royal sanction manifested by the great seal of state. Judicial writs were issued by the courts, and bore *teste* in the name of the chief justice of the court by which they were issued. The seal of the court authenticated the exercise of delegated judicial authority, not the grant of jurisdiction, and so possibly was of inferior consideration.

It is in the conditions of ancient society that we must search for the importance attached to the seal. In early times, with respect to all instruments, whether private or public, the seal was the chief and essential proof of the authenticity of the document. It was guarded with jealous care, to prevent its unauthorized use. One instance is recorded of a seal separable into four parts; the parts assigned to separate keepers, as additional security against its fraudulent employment. In that day the seal upon its face identified its owner. Writing was not common as now, and there was necessity to authenticate the execution of documents by some solemn act, speaking the consent of the party. The seal met that necessity; as to private writings, a substitute for the signature. It is, however, a long way from the speaking seal of that day to the "unsightly excrescence," the meaningless, printed scroll, or written scrawl, of the present. In the march of civilization and the diffusion of knowledge, the private seal has outlived its usefulness. That it still exists an essential to the validity of any private writing, is but another illustration of the truth that the customs of a people long survive the necessity which gave them birth. There is much sound common sense in the railing sarcasm of Judge LUMPKIN upon the subject of the seal, in *Lowe* v. *Morris,* 13 Ga. 150,—carried, perhaps, too far, when applied to official seals. Formality is yet a necessity in the administration of government. The compulsion of authority is still essential to the well-being of society, and authority needs the concomitants that appeal to the senses, exacting obedience, commanding respect. The average mind yet needs mental crutches. These are found in ceremonial dress, giving

solemnity and impressing the imagination. Without any undue reverence for formality, it is, to my thinking, still most necessary and proper that judicial process, and the proceedings of judicial tribunals, should be characterized by such adherence to form and ceremony as shall secure decorum, and add dignity and impressiveness to the administration of justice. But formality should never be permitted to work injustice, or deny substantial right. The importance attached to the seal to writs was founded, not only in the reverence paid to all manifestations of kingly authority, and in the customs of society, but also in the necessities of the state. The seals of courts were lodged with custodians appointed by the king, and the sealing of the writ had to be purchased. This was a profitable source of revenue to the crown, and may have been the chief reason for the stringency of the rule.

I find no authority in England to amend the writ with respect to the seal. As early as the time of Henry VI., parliament intervened to mitigate the rigor of the law, and to prevent miscarriage of justice arising from the subtleties of the common-law lawyers, and the mischievous errors of the clerks of courts, and by statute (8 Hen. VI. c. 12,) authorized the courts to amend writs and process issued by them, and to reform all therein arising from misprision of the clerk. This act clearly, I think, did not apply to original writs, which theoretically were issued by the king himself, not out of courts of law, and were sealed with the great seal,—never in the custody of the courts to whom power of amendment was granted by the act. I think, also, the statute had no reference to the seal to judicial writs, since its omission could not arise from misprision of the clerk, who was not its custodian. It was assumed otherwise, however, in *Hunter* v. *Turnpike Co.*, 56 Ind. 213; but I am referred to, and have found, no decision in England which recognizes any authority to amend any writ, original or judicial, with respect to the seal.

In this country, jurisdiction is vested by the constitution. The matter of revenue is not present, to complicate the question; and the clerk is custodian of the seal of the courts. There would seem to be no reason why power should not inhere in the court to correct all errors in its proceedings caused by its officers, whether with respect to the seal to a writ, or otherwise. *Cessat ratione legis cessat lex.* The power to amend by requiring the omitted signature of the clerk to the writ is allowed, upon the principle that a court will not permit its suitors to suffer from the misprision of its officers. I fail to discover any greater sanctity in the seal than in the signature of the official charged with the duty of issuing the writ. There are respectable authorities holding to the inherent power of courts to amend with respect to the seal. *Jackson* v. *Brown*, 4 Cow. 550; *People* v. *Dunning*, 1 Wend. 16; *People* v. *Steuben*, 5 Wend. 103; *Dominick* v. *Eacker*, 3 Barb. 17; *Sawyer* v. *Baker*, 3 Greenl. 29; *Seawell* v. *Bank*, 3 Dev. 279; *Purcell* v. *McFarland*, 1 Ired. 34; *Clark* v. *Hellen*, Id. 421; *Cartwright* v. *Chabert*, 3 Tex. 261; *Lowe* v. *Morris*, 13 Ga. 147; *Arnold* v. *Nye*, 23 Mich. 286, 293. In *Bailey* v. *Smith*, 12 Me. 196, the supreme court of Maine held the writ there not amendable with respect

to a seal, because an original writ, and therein distinguished its former decision in *Sawyer* v. *Baker*, *supra*, involving a final writ. It must be that the writ in *Bailey* v. *Smith* was a writ of error, this being the only original writ remaining. I wholly fail to appreciate the distinction drawn, since all writs, with us, emanate from the court. In *People* v. *Steuben*, *supra*, and *Lowe* v. *Morris*, *supra*, a writ of error was, however, held amendable. The right to amend here need not, however, be rested upon any question of inherent power.

The statutes of Wisconsin provide liberally for amendment of all errors. The courts are required to disregard any error or defect in any proceeding not affecting substantial right. Rev. St. Wis. 2829. Power is given at any stage of the action, before or after judgment, in furtherance of justice, to amend any process by correcting a mistake in any respect. Section 2830. The court of final resort of the state has repeatedly construed those statutes to authorize the affixing of a seal to a writ omitted through mistake. *Strong* v. *Catlin*, 3 Pin. 121; *Corwith* v. *Bank*, 18 Wis. 560; *Sabin* v. *Austin*, 19 Wis. 421. A like liberal rule was applied to amendments of criminal warrants. *Keehn* v. *Stein*, 72 Wis. 196, 39 N. W. Rep. 372. In other states the same construction has been given to like curative statutes. *Talcott* v. *Rosenberg*, 8 Abb. Pr. (N. S.) 287; *Murdough* v. *McPherrin*, 49 Iowa, 479. The federal government, equally with the governments of the states, has sought to cure all formal errors. It provides (Rev. St. § 948) that the court at any time may allow amendment of any process returnable to or before it when the defect is not prejudicial, and (Id. § 954) that no writ shall be abated, arrested, quashed, or reversed for defect or want of form.

It is, however, insisted that, the writ being absolutely void, under the rule of the federal court in *Insurance Co.* v. *Hallock*, *supra*, there was nothing to amend. If that be so, an anomalous result would follow. Here is a writ that, abiding in the state court, was not void,—merely defective, and amendable. Under the highest judicial authority of the state, it was a valid protection to the officer executing the writ. By the simple process of removal of the cause to the federal court, because of the diverse citizenship of the parties, that which was valid and effective becomes void, and as though it had never been,—a mere waste piece of paper. The executive officer of the state court, who, prior to the removal of the cause, was justified in the execution of the writ, by the mere act of removal becomes a trespasser *ab initio*. It would require a precise declaration of superior and constraining authority to require me to hold to such absurdity. I do not so read the decision in *Insurance Co.* v. *Hallock*. There no question of inherent power to amend, or of curative statutes, was invoked. Indeed, the statute authorizing amendment of process by the federal courts (Rev. St. 948) was enacted subsequently to that decision. The court, in its opinion, refers to the case of *Overton* v. *Cheek*, 22 How. 46, holding that a writ of error was void for want of a seal. Yet, since the statute, (17 St. 197,) it has been ruled by that court that a writ of error may be amended, where the seal to the writ is wanting. *Semmes* v. *U. S.*, 91 U. S. 21, 24. The ruling of *Pomeroy's*

*Lessee* v. *Bank*, 1 Wall. 592, cited in *Insurance Co.* v. *Hallock*, that a bill of exceptions must be under the seal of the judge, would seem overruled by *Geneves* v. *Campbell*, 11 Wall. 193, but upon other grounds than here considered. In *Tilton* v. *Cofield*, 93 U. S. 167, the court cites approvingly the case of *Talcott* v. *Rosenberg*, *supra*, holding that a writ may be amended by adding the seal. The power so to amend has been recognized in other federal courts, (*Peaslee* v. *Haberstro*, 15 Blatchf. 472; *Dwight* v. *Merritt*, 4 Fed. Rep. 615; *Paper Co.* v. *Paper Co.*, 19 Fed. Rep. 252,) and is clearly within the intendment of the conformity act, (Rev. St. § 914.) The question affects the legality of a writ authorized by a state statute, and issued out of a state court, and its reformation under the laws of that state. Under the statutes of that state, as ruled by its highest tribunal, the writ was voidable,—not void,—and was amendable as to the seal. In such case the federal courts follow the construction of the state statute, declared by its court of last resort. *Bacon* v. *Insurance Co.*, 131 U. S. 258, 264, 9 Sup. Ct. Rep. 787. Removal proceedings possess no quality to invalidate what was valid. The case comes here as it stood when jurisdiction was yielded by the state court. *Duncan* v. *Gegan*, 101 U. S. 810. Whatever was valid there is valid here. Rev. St. § 646,[1] (18 St. 470.) Whatever was amendable there can be corrected here. Whatever defect was waived there is waived here. The removal is not effectual to work destruction to valid but defective process of the state court. It would be gross perversion of justice to permit it. I know of no federal authority, properly read, that would sanction it. The defendants cannot now complain of the defective writ. They waived all objection on that score by moving in the state court to set aside the levy thereunder upon other grounds, and by failure to raise the objection prior to the release of the property to them upon filing bond for the debt. Rev. St. Wis. §§ 2742–2744; *Dierolf* v. *Winterfield*, 24 Wis. 143; *Bank* v. *Mixter*, 124 U. S. 721, 728, 8 Sup. Ct. Rep. 718.

It is not now practicable to cause the proper seal to be affixed to the writ, since the state court is divested of all jurisdiction of the cause. It would seem just, in the peculiar conditions, to enforce the equitable doctrine that the court will deem that done which ought to have been done. It will therefore be ordered that the writ stand amended, and be held valid and effectual, to all intents and purposes, as though the proper seal had been originally affixed thereto.

The pendency of the admiralty proceedings could not be well pleaded to the attachment suit. The one is a proceeding *in rem*, against the vessel; the other, an action *in personam*, against the owners. The two proceedings are also in different jurisdictions. *Harmer* v. *Bell*, *The Bold Buccleugh*, 22 Eng. Law & Eq. 62; *Insurance Co.* v. *Wager*, 35 Fed. Rep. 364.

But whether or not it is an abuse of process to levy an attachment in the action *in personam* upon the *res* that was bonded in the proceeding *in*

---

[1] This section provides, *inter alia*, that on removal of a suit from a state court, any attachment shall hold the goods in the same manner as by the laws of the state it would have held them.

*rem* for the same debt is quite another question. By her discharge in the admiralty upon stipulation to meet the decree, the vessel is freed of the lien sought to be enforced against her in that proceeding. The libelants could not have recourse to the ship again for the same claim, except, possibly, as they might have resort to any other property of the owners. And while, technically, the right may exist to proceed against the owner *in personam* for the same debt, and in that action to attach the vessel, I am strongly inclined to the opinion that courts should view such a proceeding with great distrust, as burdensome and oppressive, and an abuse of the process of the court. *The Bold Buccleugh*, *supra*, holds not to the contrary. There, in admiralty, in a proceeding *in rem*, there was a plea of *lis alibi pendens* of a suit *in personam* in Scotland. The court rightly held this plea not sustained. No question of abuse of process was preferred. It is also to be noted that at once, upon the filing of the libel, instructions were sent to abandon the foreign proceedings; and the answer to the plea was that there was no longer any suit pending. There is strong intimation in *Insurance Co.* v. *Alexandre*, 16 Fed. Rep. 279, 282, that such additional attachment of property in a subsequent suit ought not to be permitted, except for good cause shown. I am, however, relieved from determining this question by the act of the defendants. Upon their application the state court granted rehearing of their motion to set aside the levy. This vacated the order of May 24th, and left the motion pending. The condition of the case as it came to this court then was that, pending a motion to set aside the levy, the defendants gave bond, and received restitution of the property seized. That act operated as a waiver of the motion, a waiver of any irregularity or defect in the process, and a waiver of any claim that the property attached could not rightfully be subjected to seizure. *Bank* v. *Mixter*, 124 U. S. 721, 728, 8 Sup. Ct. Rep. 718; *Dierolf* v. *Winterfield*, 24 Wis. 143. It is true that since the last-cited decision the law has been amended to permit a traverse, after bond given, of the affidavit upon which the writ issued, (Laws Wis. 1881, c. 329;) but in all other respects the bond is a substitute for the attachment, and "the action shall thenceforward proceed as if no writ of attachment had been issued," (Rev. St. Wis. § 2743.) The giving of the bond waived every right to object to the writ, and the proceedings thereunder,—the writ not being void,—except the right to traverse the facts alleged as ground for issuing the writ. The defendants, therefore, by their own act recognized that the vessel was rightly subject to seizure under the writ, and cannot now be heard to the contrary. An order will be entered, granting the plaintiffs' motion to amend, and denying the defendants' motion to set aside the levy under the writ.