# CHARLESTON

## CARR & KEYS v. COAL CO.

Submitted September 3, 1908.   Decided December 2, 1908.

1. BILL OF EXCEPTIONS—*Record—Final Judgment.*
   Must it affirmatively appear, either by a bill of exceptions made in vacation, or by the record, that the bill was made within thirty days after the final adjournment of the term?   (p. 449.)

2. SAME.
   A bill of exceptions must be signed by the judge, but need not be under seal.   (p. 449.)

Error to Circuit Court, McDowell County.

Louis Carr and Joseph Keys brought *assumpsit* against the Middle States Lumber Company.   Judgment for plaintiff, and defendant brings error.

*Affirmed.*

D. J. F. STROTHER, STROTHER, TAYLOR & STROTHER, and L. C. ANDERSON, for defendant in error.

R. R, SMITH, G. L. COUNTS, HENRITZ & HENRITZ and T. L. HENRITZ, for plaintiff in error.

Brannon, Judge:

Louis Carr and Joseph Keys brought *assumpsit* in the circuit court of McDowell county against the Middle States Lumber Company to recover for lumber furnished the defendant and obtained judgment on the verdict, and the defendant brings the case to this Court.

It is urged that the bill of exceptions does not appear to have been signed within thirty days after the close of the term, and that it is not sealed, and that it does not certify the evidence so as to make it a part of the record.

Whether it must affirmatively appear from the bill or record that the bill was signed in time we need not decide, as a copy of the order of adjournment of the circuit court shows that it was signed in time. It might be thought that it would be presumed that the judge would not violate law by signing after thirty days. But on just such statutes as ours it has been repeatedly held in Alabama and Georgia that it must appear affirmatively. *Haden* v. *Brown*, 22 Ala. 572; *Cloudis* v. *Bank*, 6 Ga. 481; *Justice* v. *Barrington*, *Id.* 578; *Bush* v. *Keaton*, 65 Ga. 296. See 21 Century Digest, p. 193. As after thirty days the judge has no jurisdiction, it may be contended that jurisdiction must appear.

As to the bill of exceptions not being under seal. As the statute of Westminster, the parent of bills of exceptions, required them to be sealed, our forms long used call·for a seal, following English form, and such is the rule in most states. 3 Ency. Pl. & Prac. 457. But as the court said in *Generes* v. *Campbell*, 11 Wall. 193, as no act of Congress required a seal none is necessary in federal courts, so we say that as our statute requires only the signing, no seal is necessary; but the judge's signature is indispensable. What good would a seal do?

It is sufficient to say, without detail, that the bill so refers to the evidence by names of witnesses and pages of the stenographer's formal report of evidence as to identify, clearly and safely, the evidence. *Dudley* v. *Barrett*, 58 W. Va. 235.

The coal company had a lease of land for coal mining and was about to erect buildings and structures for operations, and on this land was oak, hemlock and poplar

timber, which it wished sawed into lumber. Carr and Keys were manufacturers of lumber, and the parties made a written contract providing that Carr and Keys should put up a saw mill on the lease of the coal company, cut and saw this timber, and furnish the company the necessary "timber, oak, poplar, hemlock, for the tipple, engine houses and other buildings necessary for its use in operating its plant at the price of $7.00 per thousand." Carr and Keys owned standing timber back of the company's leased land. A clause in the contract provided "that if the party of the first part (the coal company) desired to exchange its sawed lumber for lumber of the party of the second part, sawed from adjacent land, party of the second part shall give said party of the first part 1,-200 feet of oak or hemlock for 1,000 feet of poplar at the price mentioned above per thousand." Carr and Keys cut, sawed and delivered the timber owned by the coal company standing on the leased land, including poplar, and that not being sufficient cut and sawed their own timber, and delivered oak and hemlock to the coal company, and received from the coal company poplar lumber; but this poplar did not, upon the terms of exchange, 1,200 feet of hemlock and oak for 1,000 feet of poplar, pay for the oak and hemlock furnished by Carr and Keys from their own land. For this quantity of oak and hemlock not paid for in poplar Carr and Keys demanded $13.00 per thousand; but the coal company contended that it was to pay for this excess only $7.00, that is, for timber and sawing. It is to recover pay at $13.00 per thousand this suit is brought, and the verdict allowed pay for it at that rate or price, which the evidence shows to be fair and reasonable. The coal company insists that by the written contract, it is to pay only $7.00 per thousand feet for this lumber furnished by Carr and Keys, and they say that the contract relates only to that timber on the lease of the coal company; they say that for cutting and sawing it into lumber, they were to get $7.00 per thousand; that that is what the $7.00 refers to; that the cutting and sawing of that timber was worth that sum; and that the contract refers only to that timber, except so far, and only so far, as to the exchange of poplar for oak and hemlock. We think so. We do not think the parties intended the price of $7.00 to apply

to anything but the conversion into lumber of the timber on the leased land of the coal company, except as to so much of the lumber as might perhaps be furnished by Carr and Keys from their own timber in exchange for poplar coming from timber of the coal company. Any lumber furnished by Carr and Keys from their own timber, beyond that quantity paid for in poplar lumber coming from timber of the coal company, is out of the contract, not governed by it, and for it Carr and Keys would be entitled to demand a fair value or price. Therefore we think that the court did not err in allowing evidence of the value of such lumber furnished by Carr and Keys from their own timber, because that did not come under the written contract, and as the evidence showed the value of the lumber to be $13.00 per thousand there is no error or injustice in the verdict. Shall we compel Carr and Keys to furnish lumber from their own timber, sawed by them, to be furnished at far, far below cost? Could the parties have intended that? This poorly drawn written contract does not demand it. This excess lumber, not paid for by poplar, does not come under the contract. The parties were not treating for lumber to be furnished by Carr and Keys from their timber, except as to the exchange of poplar for oak and hemlock.

It is said that why the price was fixed so low was that Carr and Keys had no way of getting out their lumber to the railroad except over the lease land of the coal company. The contract mentions no such consideration. It would be a dear privilege. If we put ourselves in the circumstance and condition of these parties, can we for a moment think that it was their intent to pay Carr and Keys $7.00 for merely cutting and sawing the timber of the coal company on its land, and only that price for lumber made by Carr and Keys from their own timber? This would allow them nothing for their timber. They never meant this injustice. The contract was not meant to apply to lumber from the adjacent land further than the exchange, which might or might not be made.

Judgment affirmed.

*Affirmed.*